### Kinser v. The Farmer's National Bank of Centerville.

1. **Jurisdiction**: OF STATE COURTS: NATIONAL BANKING ACT: CHANGE OF VENUE. The national banking act was designed to confer jurisdiction upon the proper State courts to hear and determine actions brought against national banks, and leave such courts, after the action is commenced in the proper county, to be governed solely by the State statutes in respect to the mode of proceedings, including even a change of place of trial to another county.

2. **Usury**: CONTRACT FOR: APPLICATION OF PAYMENTS: NATIONAL BANKS. The plaintiff borrowed large sums of money, at various times, of the defendant, a national bank, contracting to pay usurious interest therefor, and from time to time deposited money in payment Occasional settlements were had, at which times the payments were deducted from the amount of the principal and interest then due, and new notes were given for the balances so found. Subsequent to final settlement, plaintiff brought suit under the national banking act to recover double the amount of the usurious interest paid within two years, *Held:*

   1. That, in the absence of an agreement that the payments should be applied first in the discharge of the interest, the defendant could not so apply them.

   2. That the usurious transaction must be held to have occurred, when the usurious interest sought to be recovered was paid.

   3. That, under the facts of the case and the rules of law, the payments must be held to have been applied *pro rata* to the principal and interest due at the time, unless there was an agreement to apply them first upon the interest; and that the burden was upon the defendant to establish such an agreement.

3. **Practice in the Supreme Court**: ASSIGNMENT OF ERROR NOT ARGUED. Where the question raised upon appeal is not argued beyond a mere restatement of the assignment of error, it will not be considered.

*Appeal from Jefferson District Court.*

TUESDAY, JUNE 13.

ACTION for a penalty brought December 21, 1878. The plaintiff avers that he borrowed of the defendant bank certain money; that he paid as usurious interest thereon during the two years last prior to the commencement of the action, the

sum of $8,000, and he asks judgment for double that amount. The defendant pleaded a general denial, and the statute of limitations. It also pleaded to the jurisdiction of the court. There was a trial without a jury. The court found that the plaintiff paid the defendant usurious interest during the two years last prior to the commencement of the action, to the amount of $622.77 and rendered judgment for double that amount. Both parties appeal, the plaintiff perfecting his appeal first.

*Tannehill & Fee, J. N. McClanahan, D. P. Stubbs* and *J. J. Cummings*, for appellant.

*Vermillion & Vermillion, Perry & Townsend*, and *Slagle & McCracken*, for appellee.

ADAMS, J.—I. The first question which naturally presents itself, arises upon the defendant's appeal; and that is in regard to the jurisdiction of the court. The action was brought in the Circuit Court of Appanoose county against the defendant, as a national bank, located in that county. The object of the action is to enforce a forfeiture for usury provided in the national banking act. The defendant's plea to the jurisdiction is based in part upon the alleged want of jurisdiction of any State court to hear and determine an action brought to recover a penalty under the national banking act; and in part upon the alleged want of jurisdiction of the District or Circuit Court of one county to hear and determine such action brought against a national bank located in another county. The latter ground only is insisted upon in argument.

The place of trial of the cause was changed in the first place to the District Court of Appanoose county upon the defendant's application, and afterwards upon the defendant's application to the District Court of Davis county. The place of trial was then changed to the District Court of Jefferson county upon the application of the plaintiff. The defendant's plea to the jurisdiction was filed in that court. The national

*[margin note:]* 1. JURISDICTION: of state courts: national banking act: change of venue.

banking act provides that "suits, actions and proceedings against any association under this title, may be had in any Circuit, District, or Territorial Court of the United States, held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located, having jurisdiction in similar cases." The defendant's theory is that the power of a State court to hear and determine an action like the present is derived wholly from the provision above quoted, and it insists that the provision confers no power upon the State court of any county to hear and determine an action brought against a national bank located in another county. It must be conceded that the action could not have been properly brought in the State court of any county other than Appanoose. The national banking act makes no provision for a change of place of trial from one State court to another, and it is contended that the State statute providing for a change of place of trial has no application to such an action. But, in our opinion, the design of Congress was to confer jurisdiction upon proper State courts, and leave such courts, after the action is commenced, to be governed solely by the State statutes so far as their mode of proceeding is concerned, including even a change of place of trial. Any other construction would be an exceedingly narrow one, and might operate to the great prejudice of one party or the other, and without any advantage whatever. Our attention has been called to no case where the rule contended for has been held, and we think that none can be found. We think that the change of place of trial was properly allowed, and that the District Court of Jefferson county had jurisdiction.

II. The next question arises upon the plaintiff's appeal. The plaintiff contends that the court erred in finding that

2. USURY: contract for: application of payments: national banks.

only the sum of $622.77 was paid as usurious interest within the two years last prior to the commencement of the action. The evidence tends very strongly to show that other payments of usurious interest were made, but the parties differ as to the

time when they were made. There is very little dispute as to the amounts paid or dates of payments. The dispute is as to the *application* of payments.

The plaintiff during the transactions in question was a dealer in stock and grain. To aid him in his business he borrowed money of the defendant bank. His first indebtedness to the bank was incurred March 20, 1875. He closed his transactions with full payment, December 22, 1877. During that time, a period of about two years and nine months, he borrowed of the bank a little more than $40,000. But during that time he made large deposits, some of which he checked out and used, and some of which were applied toward the payment of the money borrowed. On the 30th of May, 1876, he had a settlement with the bank. The amount due was found to be less than $8,000. On that day the plaintiff gave the defendant his note for $2,733.94 payable in sixty days, and his note for $5,000 payable in ninety days. The notes were drawn just large enough, as we understand, to cover the amount agreed to be due, and also the interest agreed to be paid for the time the notes were to run respectively. The note for $5,000 was paid within the two years last prior to the commencement of the action, that is, subsequent to. December 21, 1876. The other note was paid before the two years, or prior to December 21, 1876. The plaintiff claims that the note for $5,000 embraced all the usurious interest agreed to be paid prior to the time it was given. The defendant contends that it embraced no part of such interest. The court so found.

The notes above described were the last of a series of renewal notes which covered in part the earliest indebtedness, and were all tainted with usury, unless the usurious interest agreed to be paid, had been paid by the application of the plaintiff's deposits. The practice between the plaintiff and defendant was to have occasional settlements. At those settlements, the interest on the notes held by the bank against the defendant for loans, was computed to the time of settle-

ment at the rate agreed upon, generally, we think, at sixteen per cent per annum. Interest on the plaintiff's deposits was also computed at the same rate, whatever it was; and the amount of the deposits, and interest thereon, was deducted from the amount of the notes and interest, and one or more new notes were given for the balance. The deposits at the different times of settlement were always large enough to pay all accrued interest. The court made a finding in these words: "The payments made by the plaintiff to the defendant prior to the 21st day of December, 1876, were by the defendant applied first to the payment of interest, and any excess to the discharge of the principal. The plaintiff has failed to clearly prove that this application to the payment of the interest was made without his assent, or knowledge and acquiescence at the time, the court being of the opinion that the burden of proof, on this point, rests with him." The plaintiff excepted both to the finding of fact and the conclusion of law in respect to burden of proof, and assigns error thereon.

The defendant's evidence tended to show that it was understood between the parties that the payments were to be applied first upon the interest. The plaintiff's evidence tended to show that there was no such understanding. He does not, however, claim that there was an understanding that the payments were to be applied solely on the principal, but simply that there was no understanding of any kind.

The idea of the court, doubtless, was that in the absence of any agreement, the defendant might make such application as it saw fit; that the defendant did make an application, and that that application must stand unless it was contrary to the agreement of the parties, and that the plaintiff had failed to show that it was. In our opinion the ruling of the court in this respect is not free from error. If there was no agreement between the parties (a question which the evidence leaves in great doubt) it appears to us that it cannot be said that the defendant made an application of the payments primarily to the interest. We have looked in vain through the

record to find any evidence of such application. What was done was simply this: when the plaintiff's deposits were applied, the old notes were surrendered and one or more new notes were given for the balance. So far as such act is concerned, independent of any agreement or rule of law in respect to the application of payments, it might as easily be understood to be a primary application upon the principal as upon the interest. It was, we think, in fact neither, but a *pro rata* application. We speak of the act alone.

We are aware that there is a little evidence tending to show that the defendant made an entry of credit of payments, in what it calls its interest account, showing a discharge of the interest by the payments. The defendant's books were not introduced, though called for by the plaintiff, but such we, understand is substantially the testimony of the bank officers. But we must bear in mind that the plaintiff's indebtedness was represented by his promissory notes. He was in no proper sense a party to an interest account. We do not think that he could be affected by a mere entry made therein. Especially do we think that such an entry could not be allowed to give a character to the transaction between the plaintiff and defendant, different from that which it bore upon its face, and different from that which the plaintiff had a right to suppose it bore. We must hold then that what the defendant did, and what the plaintiff assisted the defendant in doing, was to make a *pro rata* application of the payments, unless their acts must be held to mean something different by reason of being interpreted in the light of some agreement or of some rule of law. If the agreement was that the payments were to be considered as applied first, in payment of the interest, then they must be so considered, unless such agreement would be controlled by some rule of law.

We will proceed first to consider whether there is any rule of law that prevents us from holding that the application was a *pro rata* application.

Where a partial payment is made in a general way upon a

promissory note, bearing legal interest, the law applies the payment first to the discharge of the interest. *McFadden v. Fortier*, 20 Ill., 509; *Frazier v. Hyland*, 1 Har. & J. (Md.), 98; *Hammer v. Nevill*, Wright (Ohio), 169; *Lash v. Edgarton*, 13 Minn., 210.

Where a partial payment is made upon a promissory note bearing usurious interest, and an action is brought to recover the balance due upon the note, the law applies the payment first upon the principal, and this is so though it appears to have been the intention of the debtor, at the time the payment was made, that it should be applied upon the interest. *Garth v. Cooper & Smith*, 12 Iowa, 364.

In our opinion neither of the above rules is applicable to the case at bar. The first is not for reasons too manifest to require any discussion. That the last is not might be thought to admit of some doubt. But it should be borne in mind that this is not an action where the debtor is seeking merely to protect himself against the enforcement of a usurious contract, but where, after the contract has been fully performed, he is seeking to recover usurious interest paid, and not only that but a forfeiture by way of penalty. Section 5198 of the Revised Statutes of the United States, after providing for the rate of interest which may be taken by national banks, contains a provision which is in these words: " In case a greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back in an action in the nature of debt, twice the amount of the interest thus paid, from the association taking or receiving the same, provided such action is commenced within two years from the time the usurious transaction occurred." The usurious transaction must be held to have occurred when the usurious interest sought to be recovered was paid. Where a payment upon the indebtedness has been made under such circumstances that it may fairly be inferred that it was the intention of the debtor to make, and of the creditor to receive, payment upon the interest, we think a right of action must be held to

have accrued at once in favor of the debtor for the amount paid and the penalty. We see nothing in the policy of the law which would apply all payments first upon the principal, and postpone the debtor's right of action until he had paid both principal and interest. The debtor needs no such rule for his just· protection; and where the fair inference is that the creditor,.in receiving the payment, intended by receiving the. usurious interest, to violate the law, he should not be allowed to escape by insisting upon an application different from what he intended. We think, then, there is nothing in the law that should be held to give the acts of the parties a different character from that which they bear upon their face.

As to whether there was any agreement, as the defendant contends, which should give them a different character, it is not our province to determine. The action is at law and not triable *de novo*. Under the undisputed evidence and rules of law, we think that the payments must be held to have been applied *pro rata*, unless, as the defendant contends, the agreement was that they should be considered as applied first upon the interest. The burden then is upon the defendant to establish such agreement, and herein we think the court erred.

The plaintiff assigns error upon the refusal of the court to compel the defendant to produce its books. The defendant, it appears, claimed that it was exempt from producing the books under section 860, of the Revised Statutes of the United States. The question raised is not argued by the plaintiff. ˙ He refers in his argument to the assignment of error, but what he says is in substance only a restatement of the assignment of error. We do not feel called upon to consider the question.

3. PRACTICE: assignment of error not argued.

The views expressed cover, we think, all questions likely to arise upon another trial so far as they have been presented in argument.

On the defendant's appeal the judgment is affirmed, and on the plaintiff's

REVERSED.