CHARLES J. SEEDS, Executor and Guardian, Appellant, v. THE GRAND LODGE OF IOWA, ANCIENT ORDER OF UNITED WORKMEN.

| 93 | 175 |
|----|-----|
| 95 | 619 |
| 93 | 175 |
| 104 | 255 |
| 93 | 175 |
| 138 | 97 |

**Evidence: Presumptions:** INSURANCE. A married man leaves home because his wife declines to live with him, later he professes to be unmarried and states that he is going to Dakota. He is in good health when last seen. Six years after his disappearance he is advertised for to receive a legacy. *Held*, there is no presumption of death by reason of the fact that he has not been heard from in seven years.

SAME. At any rate, it will not be presumed that he dies within two years after disappearing, so as to render valid an insurance policy which lapsed at the end of said two years for non-payment of dues and assessments.

*Appeal from Delaware District Court.*—HON. J. L. HUSTED, Judge.

THURSDAY, DECEMBER 20, 1894.

This action is brought to recover upon a certificate of insurance issued by the defendant to Edward Rowell for two thousand dollars, payable at his death to his wife, Margaret Rowell. Margaret Rowell, claiming that her said husband was dead, served proofs of death upon the

defendant on July 20, 1889, and demanded payment of said certificate, which was refused. On July 28, 1889, Mrs. Rowell died, leaving a will bequeathing most of her estate to Edward F. Rowell, minor son and only child of said Margaret and Edward Rowell. The plaintiff, Charles J. Seeds, was appointed administrator of said estate, and guardian of said minor, and in these capacities prosecutes this action. Issues were joined, and the case tried to a jury. At the conclusion of the evidence, on behalf of both parties, the defendant moved the court "to direct a verdict in this cause in behalf of the defendant on the undisputed facts, there being no sufficient testimony to support a verdict in behalf of plaintiff." This motion was sustained, and verdict returned and judgment entered accordingly. Plaintiff appeals. The further issues and facts sufficiently appear in the opinion.—*Affirmed*.

*Blair, Dunham & Norris* and *M. W. Herrick* for appellant.

*J. D. Nichols* and *Yoran & Arnold* for appellee.

Given, J.—I.  All dues and assessments payable under the certificate sued upon were paid up to and including August 15, 1884, and none thereafter. Under the contract of insurance, Edward Rowell, if then living, became suspended from membership, and said certificate forfeited, September 28, 1884, for a failure to pay an assessment, and on December 31, 1884, for a failure to pay dues. Under the issues, the burden was upon the plaintiff to show that the assured died during the life of the certificate. Edward Rowell has been absent and unheard of since August 5, 1882, or, according to the statement of one witness, since the last of September, 1882. There is no direct evidence of his death, but plaintiff relies upon his absence, and the circumstances

attending it, as sufficient to establish the fact of death
during the life of the certificate.  It is a familiar rule
that one shown to be alive will be presumed to con-
tinue to live, some authorities say, until he reaches the
age of one hundred years.  Abb. Tr. Ev. 73.  Equally
familiar is the rule "that when a person has not been
heard of for many years, the presumption of the dura-
tion of life ceases at the end of seven years."  *Tisdale
v. Insurance Co.*, 26 Iowa, 176.  Rowell had been
absent and unheard of for more than seven years prior
to the time this action was commenced, and, in the
absence of explanation, will be presumed to have been
then deceased, but nothing can be presumed from that
absence as to the time when his death occurred; in
other words, it cannot be presumed from his being
seven years absent and unheard of, following August
or September, 1882, that he died prior to September
28 or October 31, 1884.  *Whiteley v. Society*, (Wis.), 39
N. W. Rep. 370.  The assured had been absent and
unheard of but a little over two years prior to his sus-
pension from membership, and the forfeiture of his cer-
tificate.  The law will not presume, from that absence
alone, though unexplained, that he died during that
period.  The rule that death may be presumed from
seven years' unexplained absence does not exclude
evidence of other facts and circumstances which fairly
tend to establish the probability of death within an
earlier period.  *Tisdale v. Insurance Co., supra.*

It is not upon absence alone that plaintiff relies to
establish the death of Rowell during the life of the cer-
tificate, but also upon the circumstances connected
with that absence.  This brings us to inquire whether
the circumstances proven are such as that, under the
rule announced in *Meyer v. Houck*, 85 Iowa, 327, 52 N.
W. Rep. 235, the court erred in not submitting the case

to the jury. The rule announced in that case is as fol-
lows: "Our conclusion is that when a motion is made
to direct a verdict, the trial judge should sustain the
motion when, considering all of the evidence, it clearly
appears to him that it would be his duty to set aside a
verdict found in favor of the party upon whom the
burden of proof rests." The material facts and cir-
cumstances shown by the evidence are, in substance,
as follows: Prior to the events hereafter stated,
Edward Rowell, his wife, and only child resided
together at Manchester, Iowa, until some months prior
to April, 1882. Rowell was in the habit of using intox-
icating liquors to some extent, to which Mrs. Rowell
objected. In consequence of that, and possibly to
secure employment, he went to other places, and
remained, seldom returning to his family, and only for
a short time. Their son, Edward F. Rowell, testifies
as follows: "He returned from Independence. He
came one night from Independence. He wouldn't stay
to supper, and it was raining hard, and he went away.
My mother tried to persuade him to stay, but he would
not stay. He said he would go away, and then he
would come back. He went to Waterloo that night.
The reason he assigned for not staying was, he drank,
and my mother didn't wish to live with him while he
drank; and she said that when he would behave him-
self, and become a man, that she was willing to live
with him, and, until he did, she wouldn't; and so he
went away and tried to behave himself, I guess. He
went to Cedar Rapids to work. As near as I can
remember, he drank some before he went to Cedar
Rapids. Mother made objections to it, and that was
the cause of the trouble between them. I remember
of his coming home from Cedar Rapids. I can't
remember as she refused to live with him when he came
home from Cedar Rapids, but I know that he still
drank, and she wouldn't live with him until he had

given it up.   My mother got him a place in Independ-
ence to work.   He lost his place in Independence, and
came home, and went away again to work to Water-
loo.   He said he would send home money to help sup-
port the family.   I know he sent home one dollar.   He
promised to send home some more, but we didn't get
it.   I don't know whether or not he sent money home
when he was at the Rapids.   He sent the one dollar
from Waterloo, in this letter.   That is all the money
I know of his sending home.   I didn't see the letters
mother wrote to him to Waterloo.   He wrote some
letters while he was there, but not very many,—one,
probably, before this one,—and she answered it, and
then for quite a while there was nothing more received
from him.   I heard the letter read.   He said he had
no place, and was going to leave there.   We received
no letters after this one."   It is true that Edward F.
was only about seven years old in 1882, and that other
relatives testify that Mr. and Mrs. Rowell lived har-
moniously together; but no one contradicts these state-
ments of the son, and they are consistent with the
undisputed facts.   There is nothing to show that Mr.
and Mrs. Rowell indulged in harsh words or unseemly
quarrels, but it does fairly appear that she refused to
live with him unless he quit drinking, and that, in con-
sequence thereof, he lived elsewhere.   On April 22,
1882, he registered at the Park House, Waterloo, Iowa,
where he remained until August 5th, being employed
part of the time in a grocery store.   The following let-
ter, duly received, is the last Mrs. Rowell or any of the
family ever heard from him:   "Waterloo, Iowa, June
12, 1882.   Dear Maggie:   Take me just as you think I
am.   I know it must appear very wrong of me in not
writing you ere this, but all I can say is, for the last
three weeks I have been very, very sick, and, to tell you
the truth, I did not care very much if I ever got well

again.  But God has raised me up again, and I came
back to store this morning.  Send one dollar by this
letter.  It is every cent I have, and I am in debt now,
but do hope and trust to be able to send you some more
very soon.  Do hope you will soon write again, please,
and when you write send it to box 74, as there are two
other Rowells here in Waterloo.  From your loving
husband, Edward.  I will write you again soon, and
tell you all."

The evidence shows that he was not sick as long
and badly as stated in the letter, while at Waterloo, and
that he was in his usual health when last seen.  Dur-
ing his stay at Waterloo he paid attentions to a young
woman employed at the hotel, representing himself as
a single man, and offering to marry her.  After leav-
ing Waterloo, he visited this young woman at her
home in Cedar Falls, as late as the last of September,
1882.  The girl's mother objected to their marriage,
because of the youth of the girl.  Rowell said to the
girl before leaving that he was going to Dakota.  On
the night he left Waterloo he was seen by an acquaint-
ance going towards the river, in a direction opposite
the depots.  He told this acquaintance that he was
going to take a train; that he was going west.  The land-
lady testifies that he left without paying his bill in full;
that he poured water on the bed he had occupied, set it
on fire, locked the room door on the inside, and crawled
out through the transom.  Plaintiff introduced evi-
dence showing that some years prior to 1882 Rowell
had been operated upon for an ailment that was likely to
recur in two years; that he had been injured at one
time, and was not a rugged, healthy man.  This is
rebutted by the undisputed fact that he was in good
health when last seen.  Plaintiff showed that in April,
May, and June, 1888, the following was published in
the *New York Herald, New York Daily Tribune, Iowa*

*State Register,* and *Manchester Democrat,* and that no answer was received: "If Edward Rowell, late of Manchester, Iowa, U. S. A., will communicate with Messrs. Hunter & Davis, of 6 and 7 King William street, London, England, solicitors, he can receive a small sum of money now held by them for him." It was shown that, following Rowell's disappearance, inquiries were made by relatives at different places, but without avail.

III.   In *Tisdale v. Insurance Co., supra,* it is said: "Any facts or circumstances relating to the character, habits, conditions, affections, attachments, prosperity, and objects in life, which usually control the conduct of men, and are the motives of their actions, are competent evidence from which may be inferred the death of one absent and unheard from, whatever has been the duration of such absence." Surely, "the character, habits, condition, affections, attachments, prosperity, and objects in life," of Edward Rowell, as shown in the evidence, do not warrant the conclusion, even after the lapse of seven years, that his absence and silence are in consequence of death. On the contrary, they show that his absence and silence are voluntary, and fully explain this absence and silence as the result of causes other than his death. He was wanting in the character, habits, condition, affections, attachments, and objects in life, which usually draw men to their families, their homes, and the society in which they have lived. It was evidently not his purpose to return and dwell with his family, but, cast off as he was for his own fault, and with the character and inclinations which he evidently possessed, his object was to entirely withdraw himself from them. There is nothing in the condition of his health from which to infer death, for it is shown that when last seen he was in usual good health. His failure to answer the notice

published in the newspapers is explained by the times and places of the publication and the fact of his absence from a date prior. The publications were in New York City papers, in the *Iowa State Register*, and the *Manchester Democrat* in 1888, six years after Rowell had left, presumably for the west, probably Dakota. We are of the opinion, upon the whole record, that it would have been the duty of the trial court to set aside a verdict found upon this evidence in favor of the plaintiff. Therefore, under the rule announced in *Meyer v. Houck, supra*, there was no error in sustaining defendant's motion for a verdict.

IV. Plaintiff complains of certain rulings of the court in admitting and rejecting evidence. Plaintiff offered the proof of death made by Mrs. Rowell to the defendant, and evidence as to the belief of the family as to the death of Rowell. There are cases holding that where proofs of death are required they are admissible for the purposes of showing compliance. No such proofs were required by the rules of the defendant, and there was no issue as to proofs of death. The statement of Mrs. Rowell that she believed her husband dead was based upon his absence, as was the belief of the family, which was excluded. Surely such beliefs were, under the facts, entitled to but little weight, if any, and, if admitted, would not change the result upon the question as to the sufficiency of the evidence to show death. Defendant introduced in evidence, over plaintiff's objection, a petition for divorce, filed by Mrs. Rowell October 8, 1884, on the ground that Edward Rowell had deserted her since April 21, 1881; also the decree granting the divorce, entered November 28, 1884. In view of the relation of Mrs. Rowell to this action, there was no error in admitting this evidence. There was no error in admitting evidence showing the rules of defendant as to when assessments were made,

and when dues were payable and certificates became forfeited. Our conclusion upon the whole record is that the judgment of the District Court should be *affirmed*.