HORACE LEACH, *et al.*, v. THOMAS W. HALL, *et al.*, Appel-
lants.

**Evidence: Marriage:** PRESUMPTIONS. Where a man lives with
another woman in the town where his first wife lives and the
1 latter does not question his conduct or the legitimacy of children
born of said woman, a presumption arises that the parties to the
first marriage were divorced and that the husband has remarried.
*Ellis v. Ellis,* 58 Iowa, 720; *Gilman v. Sheets,* 78 Iowa, 499, and
*Barnes v. Barnes,* 90 Iowa, 282, *distinguished.*

**SAME.** Where a son of affectionate disposition and in the habit of
writing frequently, has not been heard from for nearly seven
2 years prior to the death of his father, and was that long ago very
ill of consumption, it will be presumed that his father outlived
him.

**Tenants in Common:** SUBROGATION. A tenant in common cannot
acquire an outstanding title against his cotenants by subrogation
3 to the rights of the holders of a mortgage paid off by him. He is
confined to contribution.

**OUSTER.** A covenant of warranty in a deed is an ouster of the other
4 cotenants and it makes the tenant who gives the deed liable for
rents and profits though none were collected.

5 **SAME.** The giving of a mortgage is not such ouster.

*Appeal from    Clinton    District    Court.*—HON. C. M.
WATERMAN, Judge.

FRIDAY, OCTOBER 11, 1895.

| 95 | 611 |
|---|---|
| 102 | 158 |
| 95 | 611 |
| 107 | 127 |
| 95 | 611 |
| 108 | 9 |
| 95 | 611 |
| 116 | 339 |
| 95 | 611 |
| d121 | 99 |
| 123 | 620 |
| 95 | 611 |
| 125 | 727 |
| 95 | 611 |
| d129 | 550 |
| 130 | 248 |
| 95 | 611 |
| 137 | 350 |
| 95 | 611 |
| 138 | 100 |

Action of right to recover the possession of certain lots in the city of Clinton. Defendant Hall filed an answer and cross petition, in which he claimed to be the owner of the property, and alternately of an undivided interest therein, and asked that, in the event he be found a cotenant with plaintiffs, partition be made of the lots, and for other relief. The Germania Building Association filed a separate answer and cross petition, asking the foreclosure of a certain mortgage held by it upon the property in controversy, executed by one T. W. Hall, who, it claims, was the owner of the property at the time the mortgage was given. The cause was tried to the court, and a decree passed finding: That plaintiffs, Horace Leach and Deforace Leach, are the owners of an undivided two-thirds of the property in controversy, subject to certain offsets for incumbrances removed and taxes paid by the grantors of defendant T. W. Hall. That defendant T. W. Hall is the owner of an undivided one-third of the lots, and that he is entitled to contribution for taxes paid by him and Emma O. Leach, one of his grantors, with interest thereon at 6 per cent. from date of payment, and that he is also entitled to contribution for certain mortgage indebtedness paid by said Emma O. Leach, with interest at 6 per cent. from time of payment; the total amount of taxes and mortgage incumbrance being the sum of one hundred and ninety-one dollars and three cents. That plaintiffs are entitled to an offset or recoupment against the said one hundred and ninety-one dollars and three cents of the rental value of their two-thirds interest in said real estate from the date of filing their petition, amounting to the sum of ninety-three dollars and thirty-four cents, leaving a balance due defendant T. W. Hall from plaintiffs of ninety-seven dollars and sixty-nine cents, which was declared to be a lien on plaintiffs' two-thirds interest in and to the premises. That

there was due the Germania Building Association
the sum of five hundred and seventy-three dollars
and eighty-four cents, which was declared to be a
lien upon the interest of T. W. Hall, prior to the
lien and claims of any of the parties. That the premises
be sold, and the proceeds applied—*First*, in satisfaction
of the costs; *second*, that plaintiffs receive two-thirds
of the remainder, less the sum of ninety-seven dollars
and sixty-nine cents due from them to T. W. Hall; and
the remainder paid to the Germania Building Associa-
tion. A general execution was also ordered in favor
of the building association against T. W. Hall for any
balance which might remain unsatisfied. Defendants
Hall and the building association appeal.—*Modified.*

*Walliker Bros.* and *McCoy Bros.* for appellants.

*Calvin H. George* for appellees.

Deemer, J.—It appears from the testimony that
one Tertius Holly Leach was married to one Orica Fan-
ton, in the state of Vermont, in the year 1834, and that
plaintiffs, Horace Leach and Deforace Leach, are the
sole and only issue of that marriage. In the year 1837,
and shortly after the birth of these children, Tertius
Leach deserted his wife, Orica, and some time in that
year married a woman known as Orinda Leach, in the
state of New York. Three children were the result of
this union,—Henry, who died many years prior to the
death of his father; Charles, who was a soldier in the
late war, and who returned to Vermont, sick with con-
sumption, and who afterward went to Philadelphia in
quest of health, and was last heard from six years and
nine months prior to the death of his father; and Emma
O. Leach, who lives with her mother in the city of Clin-
ton. Some time after the birth of these children, the
issue of the second marriage, Tertius Leach abandoned

Orinda while they were living in Vermont, and went to the Pacific coast, where he remained for several years; he next being heard of by any of his relatives at Clinton about the year 1866. He came to Clinton with a woman whom he represented as his wife, known as Malissa Leach. Shortly after coming to Clinton, and in the year 1878, he purchased the lots in controversy. Shortly after the purchase of these lots, the second wife, Orinda, accompanied by her daughter, Emma, came to Clinton, and from that time up to the death of the elder Holly, which occurred on September 19, 1881, Orinda and he lived together as husband and wife. After the death of Tertius Leach, Orinda and her daughter, Emma, continued to use and occupy the premises in controversy, executed mortgages thereon, and claimed to be the owners thereof, and on the twentieth day of June, 1890, they conveyed the same by warranty deed to defendant T. W. Hall. Hall thereafter executed a first mortgage thereon to the Germania Building Association, and a second one to George Hayward & Sons, who are also defendants in this suit. June 24, 1890, Orica, the first wife of Tertius Holly, died intestate, leaving as her only heirs the plaintiffs herein. Tertius Holly, during his lifetime, at all times, recognized the children of Orinda—Henry, Charles, and Emma—as his, and they have the same right to inherit from him as if born in lawful wedlock. After the purchase of the property, Leach executed two mortgages thereon,—one for sixty dollars, to one Wadleigh, in the year 1878; and another, for forty-eight dollars and seventy-five cents, to one Warner, in the year 1880. These mortgages drew interest at the rate of ten per cent. from date. The first of these mortgages was paid by Emma Leach in the year 1883, and the second in the year 1882, she taking an assignment thereof, which was duly recorded. Afterward she, as assignee, released these mortgages for the purpose of perfecting the title. Emma Leach

and her mother paid all taxes assessed against the property after the death of Tertius. The plaintiffs claim to be the owners of said property by reason of being the legal and only heirs at law of Tertius Holly Leach and Orica Leach. The defendants deny their heirship, claim that Tertius Leach was divorced from his first wife, and further allege that the property in controversy was held in trust by Tertius Leach for Orinda Leach, she having furnished him the money with which the property was purchased before he left Vermont for the West. Defendants further claim a lien upon the premises for the amount of the mortgages paid by Emma Leach, with ten per cent. interest thereon to the date of trial, insisting that they are subrogated to the rights of the original mortgagees. They also ask that the amount of taxes paid by them be established as a lien upon the premises. Plaintiffs, in reply, allege that the defendants and their grantors have had the possession and occupancy of the premises and the rents and profits thereof ever since the death of the elder Leach; that they have ousted plaintiffs from the possession of the property; and that they are entitled to have the rental value offset as against the amount allowed defendants for incumbrances or taxes paid by them, and any balance that may remain over and above these amounts established as a lien in their favor on the defendants' interest in the lands. They claim they are entitled to seven-ninths interest in and to the property in controversy, and that defendants are entitled to a two-ninths interest therein, subject to plaintiffs' claim for rents and profits.

The first question to be considered is, what interest, if any, have the plaintiffs in and to these lots? It

is conceded by counsel for appellants that Orica Leach was at one time the lawfully wedded wife of T. H. Leach, but they insist that under the facts of this case the presumption arises that these parties were divorced. It appeared from the testimony that after the second marriage, which was in 1838, T. H. Leach and Orinda Leach lived in the town where Orica Leach was living, until T. H. Leach left for the West, and that Orica never made any claim that T. H. Leach was her husband. Orica was introduced to the second Mrs. Leach, but nothing was said about her relations to T. H. Leach. Children were born as a result of this second marriage, and they were recognized as legitimate by the first wife. Emma Leach, a child of the second marriage, was introduced to the first wife, and they frequently met thereafter. At the time of the second marriage, Leach claimed to have been divorced from his first wife; but there is no testimony in the record, other than presumptions, as to a divorce having been granted. Neither is there any direct testimony tending to show that Orica Leach did not obtain a divorce, except the presumption that the marriage relation once shown is presumed to continue. We think these facts bring the case within the rule announced in the case of *Blanchard v. Lambert*, 43 Iowa, 228. The law presumes that this second marriage was lawful, and not criminal, and that either Leach or his first wife had obtained a divorce before the second marriage. It is true, as said in *Ellis v. Ellis*, 58 Iowa, 730 (13 N. W. Rep. 65), that "there must be something, based upon the acts and conduct of both parties, inconsistent with the continuance of the marriage relation, before the presumption should be indulged" that a divorce had been granted. But we think that something is present in this case. Here there is not only a second marriage, which would be unlawful but for a prior divorce, but the parties to this second marriage live and cohabit with each other as

husband and wife in the locality where the first wife resides. The first and second wives are introduced to each other as the Mrs. Leach. The first Mrs. Leach is introduced to a daughter of the second. All this occurs without any protest or complaint from the first Mrs. Leach. There is no testimony whatever to meet the presumption of divorce; no showing that the parties to the first marriage were not divorced. The second marriage having been solemnized according to the forms of law, every presumption should be indulged in favor of its validity. Mr. Bishop, in his work on Marriage and Divorce, at section 457, uses this language: "Every intendment of law is in favor of matrimony where a marriage has been shown in evidence, whether regular or irregular; and, whatever the forms of proofs, the law raises a strong presumption of its legality, not only casting the burden of proof on the party objecting, but requiring him throughout in every particular plainly to make the fact appear against the constant pressure of this presumption that it is illegal and void; so that it cannot be tried like ordinary questions of fact which are independent of this sort of presumption." If it be said that this rule requires one to prove a negative, it may be said in answer that very frequently one has the burden of proving a negative. Where a negative is essential to the existence of a right, the party claiming such right has the burden of proving it. 2 Greenl. Ev., section 454. The case at bar differs materially in its facts from *Ellis v. Ellis, supra; Gilman v. Sheets*, 78 Iowa, 499 (43 N. W. Rep 299); and *Barnes v. Barnes*, 90 Iowa, 282 (57 N. W. Rep. 851). In each of these cases the act of one party alone was relied upon as being sufficient to create the presumption, and the language we have heretofore quoted from *Ellis v. Ellis* is quite significant. In the *Barnes Case* the question is made to turn upon the facts—*First*, that plaintiff, the first wife, did not know of the second marriage; and, *second*, that

there was affirmative evidence that no divorce had in fact been granted. The facts in this case clearly bring it within the rule of the *Blanchard Case*, and, following that case, we must hold that the presumption of divorce has not been overcome. As supporting our conclusions, see *In re Edwards*, 58 Iowa, 451 (10 N. W. Rep. 793); *Schmisseur v. Beatrie*, 35 N. E. Rep. (Ill.) 525; *Boulden v. McIntire*, 21 N. E. Rep. (Ind.) 445; *Coal Co v. Jones*, 8 N. E. Rep. (Ill.) 865; *Johnson v. Johnson*, 3 N. E. Rep. (Ill.) 232; *Carroll v. Carroll*, 20 Tex. 731; *Klein v. Sandman*, 29 Mo. 259; *Cartwright v. McGown*, 121 Ill. 388 (12 N. E. Rep. 737); *Thomas v. Thomas*, 124 Pa. St. 646 (17 Atl. Rep. 182). From what we have said it follows that Orica Leach took nothing from T. H. Leach, and that plaintiffs inherited nothing through her. They are entitled to inherit from their father, T. H. Leach, however, and the next inquiry is, what proportion of his estate are they entitled to?

II. It is claimed on behalf of appellants that the second wife furnished her husband with the money which purchased the lots in controversy; that she gave it to him just before he started for the West, and that he invested it in the Clinton property. We do not think this claim is sustained by the testimony, and dismiss it without further consideration.

III. As has already been stated, Henry Leach, one of the children of the second marriage, died without issue, before the death of his father; and Charles Leach, another of the children, was last heard from six years and about nine months prior to the death of the elder Leach. The circumstances attending his disappearance are as follows: He was a soldier in the Civil War, and came home very sick with consumption. About the year 1874 he started to take a sea voyage for his health, and was last heard of at Philadelphia. He was of an affectionate disposition, and was warmly attached to his mother and sister, and

was in the habit of writing to them frequently when away from home. The presumption arises, under these circumstances, that he died before his father. *Tisdale v. Insurance Co.*, 26 Iowa, 176; *Seeds v. Grand Lodge*, 93 Iowa, 175 (61 N. W. Rep. 411); *Davie v. Briggs*, 97 U. S. 628; 2 Greenl. Ev. pp. 296, 297. There was but one child of the second marriage living at the time of the death of Leach. The second wife was alive, and, as we have seen, was entitled to one-third of the estate of her husband. The remaining two-thirds descended to plaintiffs and Horace and Deforace Leach and Emma O. Leach, share and share alike.

IV. Emma O. Leach paid off and satisfied two mortgages against the property, which had been placed thereon by her father, and defendants, as her grantees, insist upon the right to be subrogated to the rights and remedies of the original mortgagees. Her right to contribution is unquestioned, but it is insisted by appellees that she cannot enforce subrogation. In this they are correct. Emma O. Leach was a cotenant with plaintiffs in the property, and could not acquire an outstanding title or incumbrance as against them. Her duty was to pay off the incumbrances, and look to plaintiffs for contribution. Having paid these claims, she is entitled to recover from plaintiffs their proportion of the indebtedness, with six per cent. interest thereon from the time she paid them. The same rule obtains as to the taxes paid.

V. The lower court charged the defendant Hall with two-thirds of the rental value of the premises from the date of filing plaintiffs' petition up to the time of trial, and found that the rent of the whole was worth ten dollars per month. It is contended in argument that, as plaintiffs and defendant Hall are tenants in common, and as there has been no ouster, Hall should not be charged with rent. If there had been no ouster, as claimed, then appellants' position is undoubted. But

where one tenant in common ousts his cotenant, he is then liable for the rents and profits, although none have been collected. As has been stated Orinda and Emma Leach conveyed the property in question, by warranty deed, to defendant Hall, June 20, 1890. Hall immediately took possession thereof, claiming to be the owner, and has since used and occupied the same as such. This, in law, amounted to an ouster,—*Kinney v. Slatterly*, 51 Iowa, 353 (1 N. W. Rep. 626), and defendant Hall is liable to plaintiffs for their share of the reasonable rental of the property since that time. It is claimed by appellees that the ouster occurred at the time the mortgages were executed by Orinda and Emma Leach, which have heretofore been referred to. We do not think that the making of these instruments amounted to a disseizin. Freeman Cotenants, section 226, and authorities cited. Defendant Hall, then, is liable to plaintiffs for their proportion of the value of the use of the property since he took possession, which was on the twentieth day of June, 1890. Our conclusion with reference to the taxes and incumbrances is that plaintiff should be charged with four-ninths of the amount paid by Hall and his grantors, which amounts to one hundred and twenty-seven dollars and thirty-four cents, and as against this should be offset four-ninths of the rental value of the premises from June 20, 1890, to the date of the decree in the lower court, which amounts to the sum of one hundred and twenty dollars—leaving a balance due Hall of seven dollars and thirty-four cents, which should be made a lien upon the share awarded to plaintiffs, which amount should draw interest at the rate of six per cent. from September 19, 1892. The value of the use of the property since this last-named date, if the same is recoverable, must be had in another action.

VI.   Defendant Hall's mortgage to the Germania Building Association is a lien upon his interest alone, and should be paid out of the proceeds arising therefrom.

Our conclusions do not exactly accord with those of the learned district judge, and that there may be no confusion we will again state our findings.   We find that plaintiffs are the joint owners of an undivided four-ninths interest in and to the property in controversy, subject to the claim of defendant Hall for taxes and incumbrances paid, amounting to seven dollars and thirty-four cents, which amount, with accrued interest, should be paid out of their interest in the property.   The defendant T. W. Hall is the owner of the remaining five-ninths interest in and to said property, subject to the lien of the Germania Building Association.   There was due this association on September 19, 1892, the sum of five hundred and seventy-three dollars and eighty-four cents, which was and is a first lien upon his interest in and to the property.   It is found that upon a sale of the property by the referees heretofore appointed the costs as between plaintiffs and defendants should first be paid. Of the remainder plaintiffs should receive four-ninths, less the sum of seven dollars and thirty-four cents, with interest, due Hall; and the balance, or so much thereof as may be necessary to satisfy the claim of the building association, with interest, costs, and attorney's fees, which are hereby fixed at thirty-five dollars for its attorneys, should be paid to it; and, if any remains, it should be paid to defendant Hall.   Judgment should be rendered in favor of the Germania Building Association as against defendant Hall for the amount found due, which should draw interest at the rate of eight per cent. from September 19, 1892, and the costs,—which will include a fee of thirty-five dollars for his attorneys, —and an order should be made for a general execution

against Hall in the event the property does not sell for enough to satisfy the judgment with costs. Plaintiffs and defendants will each pay one-half the costs of this appeal.—*Modified and affirmed.*