In the Matter of the Estate of JAMES BARRETT, Deceased, STATE BANK OF FREMONT and E. E. AUSTIN, Appellants.

Estates of decedents: DEATH: BURDEN OF PROOF: EVIDENCE. One asking administration upon the estate of a decedent has the burden of proving his death; and a finding of death by the court in making the appointment of an administrator establishes the fact prima facie that the person is dead, and the burden is then cast upon the one collaterally attacking the order to show that such person is still alive. The evidence in the instant case is held insufficient to show that the person for whom the administrator was appointed is still alive.

Same: ADMINISTRATION: COLLATERAL ATTACK. The appointment of an administrator for the estate of one who is alive prior to the lapse of seven years is void, and may be collaterally attacked.

Same: DISCOVERY OF ASSETS: EVIDENCE: PREJUDICE. Where a bank and its cashier were ordered to appear for examination touching the assets of a decedent it was proper to examine the vice-president, who was also a director of the bank, but not witnesses having no connection with the bank. However, where the evidence of such witnesses as were improperly examined had no bearing upon any material question involved, the error in permitting their examination was not prejudicial.

**Same:** EVIDENCE: SCOPE OF CROSS-EXAMINATION. Where a witness, who made affidavit of decedent's death, testified in a proceeding for discovery of assets merely to an inability to find certain papers, cross-examination touching her knowledge of the death of decedent was improper.

**Same.** A party who made application for the appointment of an administrator could not be required to appear for examination touching matters embraced in the application, in a proceeding to discover assets of the estate, unless ordered by the court to do so, or at least subpœnaed.

**Same:** DISCOVERY OF ASSETS: WRONGFUL POSSESSION. Where a bank issued drafts payable to a decedent several years previous to his disappearance, which had not been paid and could not be found, the bank could be required in a proceeding by the administrator to discover assets of the decedent to issue duplicate drafts, when properly indemnified by the administrator against any loss on account thereof; as the possession of the funds by the bank was wrongful as against the administrator, although not fraudulent or tortious.

*Appeal from Mahaska District Court.*—Hon. Henry Silwold, Judge.

Thursday, November 5, 1914.

This is an appeal from an order in probate, by which appellants were directed to stop payment of certain drafts, and that the defendant bank issue duplicates of said drafts to the administrator. The State Bank of Fremont and E. E. Austin, the cashier, appeal.—*Affirmed.*

*Irving C. Johnson* and *Burrell & Devitt,* for appellants.

*Reynolds & David* and *C. C. Orvis,* for appellee.

Preston, J.—The real contention in this case seems to be which of two banks shall hold the money in controversy for a time. The administrator, who is also a banker, applied for and obtained an order requiring appellants to appear and

submit to an examination touching the possession or control by them of assets of the estate. Appellants filed a motion or resistance, in which they deny that the court has any jurisdiction to grant an order requiring them to appear, and they deny that James Barrett is now deceased; they say there is nothing of record to show that James Barrett is now deceased, except the affidavit of Catherine E. Sullivan, attached to the petition for administration, and that it does not·show the means of knowledge of affiant, or where or when Barrett died, or any other facts with reference to his death; that all proceedings with reference to the estate of a person now living are void, and they ask that the said Catherine E. Sullivan be required to be brought before the court and submit to a cross-examination in relation to the alleged death of Barrett. No ruling was made on this motion, and no order for the cross-examination of Catherine E. Sullivan. When witnesses were called, appellants objected on the same grounds, and because Catherine E. Sullivan had not appeared for cross-examination.

I. The legal question most strongly urged by appellants is that the court was without jurisdiction to enter any order requiring the appellants to appear and submit to examination, and was without any jurisdiction to make

1. ESTATES OF DE-
CEDENTS: bur-
den of proof:
evidence.

any order requiring the appellants to produce any money or property, because there was no competent evidence of the death of James Barrett, and that, therefore, the appointment of an administrator was void. The evidence of the witnesses examined by the appellee, viz., E. E. Austin, cashier, and D. K. Unsicker, who was vice president and a director, of the appellant bank, shows the following facts as to the character, habits, condition, and previous conduct of James Barrett: He was at the Bank of Fremont on January 6, 1911, at which time he received the five drafts in question, issued by appellant bank and drawn on banks in Des Moines and Chicago, to the amount of more than $8,000. These drafts have never been presented for payment or cashed, but the money of appellant bank is on deposit in

the Chicago and Des Moines banks, upon which the drafts were drawn, to the credit of appellant. The appellants had not stopped payment of the drafts at the time of this trial. Barrett was last seen January 27, 1911. He was at that time eighty-one years of age and reasonably well for a man of his age. When he was at the bank January 6th he had about $150 or $200 in cash. He was a man who spent very little money on himself for the comforts of life, and ordinarily would be considered as a tramp. In the winter he would wear an old felt hat, with a red handkerchief wrapped over it. He wore no overshoes, and rather a shabby overcoat, if he had any at all. People would be more apt to give him money than to try to take any away from him. A number of years ago he drove to town, tied his team to the hitch rack, and went to Oregon, and they did not know where he was for four years. His wife finally went out there to him. His son had tried to place him under guardianship as incompetent, but the guardianship was denied. These witnesses had never seen the dead body of Barrett, nor had they seen any one who had seen his dead body. He had simply disappeared, without letting any one know his whereabouts. He left a certificate for $100 with witness Unsicker to pay his taxes, and the balance, if any remained, to be paid to a person named.

It seems that Catherine E. Sullivan, a daughter of Barrett, made an affidavit in connection with the petition for the appointment of an administrator, stating that Barrett was dead, and that he had died in Mexico, but not stating where or when the death occurred. Neither this petition nor affidavit were introduced in evidence in this case. As we understand the record, the application for the appointment of the administrator was presented to a judge of the district court in Mahaska county, Iowa. It is not contended that Barrett was not a resident of Mahaska county when he left, and there is no evidence of an intention on his part to change his residence, and no evidence that he had done so. Code, section 225, provides that the district court of each county shall have

original jurisdiction to probate the wills of, and to grant administration upon, the estates of all persons who at the time of their death were residents of the county. Code, section 3307, provides for the administration of estates of absentees after seven years have elapsed, but it is not claimed that these proceedings were had under the section last referred to.

It is contended by appellants that, unless James Barrett was dead at the time administration was granted, the essential basis of jurisdiction was absent, and that the burden is upon the appellee to prove the death of James Barrett. In *New York Life Ins. Co. v. Chittenden*, 134 Iowa, 613, in speaking of administration upon the estate of a person who has not been absent seven years, it is said:

It seems to be conclusively settled by adjudications that a probate court acquires no jurisdiction by proceeding to administer on the estate of a person on the ground that he is dead, if in fact he is alive, and such proceedings are entirely invalid, and any judgments or orders made in pursuance thereof, and any action taken thereunder, are absolutely void as against the person who is erroneously adjudged to be dead.

See, also, *Scott v. McNeal*, 154 U. S. 34. (14 Sup. Ct. 1108, 38 L. Ed. 896) ; 18 Cyc. 66.

It is doubtless true that, when application was made for the appointment of the administrator in this case, the party applying for the administration had the burden to show that Barrett was dead. That was done, and the court or judge making the appointment was satisfied from the evidence that Barrett was dead, and the appointment was made. The showing may be made circumstantially, by showing facts and circumstances which fairly tend to establish the probability of death within a period earlier than seven years. The presumption obtains from absence alone, after seven years. No appeal was taken from that finding, and no action has been had to set aside the appointment. That finding has force as an adjudication until it appears that Barrett is alive. The court, then, had jurisdiction of the subject involved in the applica-

tion for authority to administer the estate of Barrett as a deceased person. We do not know whether the court had the same evidence now before us, but when letters of administration were awarded the court necessarily decided the question of fact that Barrett was dead.

Appellee cites cases to the effect that the appointment may not be attacked collaterally. This is the rule in some cases. But, under the authorities before cited, where the administration has been granted upon the estate of one who is in fact alive, and before seven years has elapsed, the appointment is void, and may be collaterally attacked. But it must be made to appear, after the appointment, that the party is now alive, or was when the appointment was made. We think the burden is now upon the appellants to show that Barrett is alive, or was at the time of the proceedings from which this appeal is taken.

2. SAME: administration: collateral attack.

Appellants cite *Seeds v. Grand Lodge*, 93 Iowa, 175, and other cases, to the effect that one who is shown to be alive will be presumed to continue to live. But there would be a limit somewhere, of course. The mortuary tables were not introduced in evidence, but the expectancy of a person eighty-one years of age is necessarily short.

Conceding the rule as to the presumption just referred to, we have against this the evidence which has been recited, and we are of opinion that appellants have not shown that this man was alive when these proceedings were had. There is no presumption of death from his mere absence alone for two or three years; but this, with the other circumstances, fairly tends to show the probability of death. In this connection, there is another circumstance which might be referred to. If Barrett went to Mexico, as stated in the Sullivan affidavit, and as claimed by appellees, we may take notice of the war in Mexico for the last few years as indicating a condition of more or less peril to a person such as Barrett is shown to have been.

II. Complaint is made by appellants because the court permitted D. K. Unsicker, Catherine E. Sullivan, and R. K. Davis to testify. We think it was irregular as to Sullivan and Davis. Cases are cited by appellant in which this court held that such evidence was properly excluded. The trial court in this case should have excluded the evidence of Davis and Sullivan; but, as will be shown, their evidence was not material, and no prejudice could result. Unsicker was vice president and a director in the bank. The order to appear for examination was directed to the bank, and to E. E. Austin, cashier, and we think it was proper to examine Unsicker as an officer of the bank, as well as the cashier; it appearing that he had knowledge of these transactions as such officer. Sullivan was examined by the court on its own motion, and to matters that are not material; she testifying only that she had not found any of the drafts, and Davis testifying only to the custom in stopping payment of drafts. Neither of these witnesses testified to any of the facts bearing upon the question as to the death of James Barrett, or any other question that was material to the hearing, and, while we think it was irregular to hear the testimony of these last two, there was no prejudice to appellants because thereof.

*3. SAME: discovery of assets: evidence: prejudice.*

III. As before stated, Catherine E. Sullivan was a witness called by the court, and appellants sought to show, by cross-examining her, what she knew about her father's death, and this was objected to as not cross-examination, and sustained. They also made an offer to prove. We think the matter sought to be thus brought out was not cross-examination.

*4. SAME: evidence: scope of cross-examination.*

IV. Appellants further complain because they were not given an opportunity to cross-examine Catherine E. Sullivan on her affidavit which she filed in the application for the appointment of the administrator. This matter was mentioned by appellants in their motion, or resistance, which has been before set out. It does not ap-

*5. SAME.*

pear that the matter was called to the attention of the court, and appellants did not further press the matter. The witness would not be required to appear for cross-examination unless ordered to do so, or at least subpœnaed.

V. As before stated, the taking of the testimony of other witnesses than that of the persons who were to be examined was irregular. It is true that section 3315 of the Code does

6. SAME: discovery of assets: wrongful possession.

not contemplate a trial of an issue of fact, but is in the nature of a bill of discovery. If it appears without dispute that the party summoned for examination has property in his possession or under his control, he may be ordered to deliver it to the administrator. If he claims some right in the property, or there is a dispute as to the facts, the administrator should resort to some other appropriate action for his remedy. But in this case there is no dispute as to the facts which were established by the evidence of the appellants. Their possession need not necessarily be wrongful in the sense that it is fraudulent, or the like; but the question is, rather, who is in the right about the possession or was rightly entitled to the money or property? Barrett paid money to the appellant bank, and it, in turn, issued its drafts to Barrett. The drafts were drawn against its funds which it had in the Des Moines and Chicago banks, where it now stands to the credit of appellant. The drafts are lost. It is true, as claimed by appellants, that there is no direct evidence that the drafts were lost; but the drafts disappeared with Barrett, and have not been seen or heard of since, and they have not been cashed.

The administrator is entitled to the possession of the money of the deceased. The bank has not the actual possession of the money or drafts, but they are under its control. The order of the court was to the effect that appellant bank should stop payment of the drafts and issue duplicate drafts to the administrator, when he shall indemnify it by giving a bond, under section 3060-a199, Code Supplement. Under the circumstances of this case, there was no other way in which

this money or property could be delivered to the administrator, unless payment of the money itself had been asked, which would be less favorable to appellants than the order which was made. There being no dispute as to the facts, there would be no necessity for the administrator to commence another action. There is a dispute between counsel as to whether the administrator has given bond as required by the order. Whether he has or not is not material on this appeal, for the reason that, under the order, he must do so before the appellants are required to comply with the order.

We conclude that there is nothing in the record of which appellants may justly complain, or by which they have been prejudiced. The judgment and order are therefore—*Affirmed.*

Ladd, C. J., and Evans and Weaver, JJ., concur.