## NORTHWESTERN MUT. LIFE INS. CO. v. JOHNSON.

## NATIONAL LIFE INS. CO. OF MONTPELIER, VT., v. MILLER.

(Circuit Court of Appeals, Eighth Circuit. September 24, 1921.)

Nos. 5160, 5251.

1. Insurance ⬅➡400—Policy incontestable for suicide after two years.
   Provision in life insurance policy that policy shall be void if insured within two years shall die by his own hand, whether sane or insane, prevents the insurer, after two years, from denying liability, if insured came to his death by his own hand, in the absence of a showing he was insane at the time.

**2. Insurance ⚖=>659 (2)—Letters of insured held admissible to show intent, as bearing on issue of death.**

In an action on a life insurance policy, where circumstantial evidence had to be relied on to establish assured's death, as his body had never been found, letters written by him, found in a safe deposit box after his disappearance, and also testimony of witness in relation to a conversation he had with assured shortly before his disappearance, *held* admissible to show his intent to commit suicide.

**3. Evidence ⚖=>100—When plaintiff's case depends on circumstantial evidence, evidence liberally admitted.**

When plaintiff has to rely solely on circumstantial evidence, the law is liberal in admitting any evidence which will aid in establishing the facts necessary to a recovery.

**4. Executors and administrators ⚖=>29 (2)—Appointment of administrator not subject to collateral attack.**

Since Iowa district courts are courts of record, with power to appoint administrators of the estates of deceased persons, their judgments in making such appointments are not subject to collateral attack.

**5. Executors and administrators ⚖=>524 (1)—Foreign administrator cannot sue in Iowa.**

Under Code Iowa, § 3306, a foreign administrator cannot sue in its courts, but must take out letters of administration in that state in order to sue.

In Error to the District Court of the United States for the Southern District of Iowa; Martin J. Wade and Page Morris, Judges.

Actions by Isabel H. Johnson against the Northwestern Mutual Life Insurance Company, and by A. M. Miller, administrator of the estate of George P. Johnson, intervener, against the National Life Insurance Company of Montpelier, Vt. Judgments for plaintiff in each case, and defendants bring error. Affirmed.

Eugene D. Perry, of Des Moines, Iowa (Harley H. Stipp, Robert J. Bannister and Vincent Starzinger, all of Des Moines, Iowa, George B. Young, of Montpelier, Vt., John Barnes, of Milwaukee, Wis., and James H. McIntosh, of New York City, on the brief), for plaintiffs in error.

S. F. Prouty, of Des Moines, Iowa, for defendants in error.

Before HOOK, Circuit Judge, and TRIEBER, District Judge.

TRIEBER, District Judge. These were actions upon policies issued by each of the defendants upon the life of George P. Johnson, payable in the first case to his wife, and in the second to his executors or administrators. The complainants, after alleging the issuance of the policies sued on, proofs of death, demand, and refusal to pay, stated that the assured died on February 28, 1911, by his own hand.

The answers in both cases denied that the assured was dead, and further pleaded that, if dead, he died by his own hand, while not insane, and there could be no recovery upon the policies, even if they made no such exceptions; it being against public policy to permit such policies to be issued. In the second case, that against the National Life Insurance Company, there was an additional plea that, if the assured is dead, the district court of Polk county, state of Iowa, which appointed Mr. Miller as administrator of the estate of the deceased, was without jurisdiction, as, at the time the policy was issued and at the time of Johnson's disappearance and alleged suicide, the assured

was domiciled in the city of Baltimore, Md.; that he never resided in the state of Iowa, and had no property whatever in that state; that, after the supposed death of the assured, his widow and children removed from the city of Baltimore to the City of Chicago, in the state of Illinois, where they resided until 1913, when they removed to the city of Des Moines, in the state of Iowa; that the assured owed a great many debts in the state of Maryland, although no letters of administration were ever taken out in that state; that he owed no debts to citizens of the state of Iowa; and that there was no other property in the state of Iowa, except the policies sued on, and some little furniture of small value.

[1] There was a trial to a jury, and verdicts in favor of the plaintiffs, which it is sought to reverse by the writs of error from this court. Whether a contract of life insurance, if construed to make the company liable in case of a suicide of the assured, it not appearing that he was insane at the time, is against public policy, and therefore void, was certified by us to the Supreme Court.

The first question certified was whether the provision in the policies that "if within two years from the date hereof the said insured shall * * * die in consequence of a duel, or shall, whether sane or insane, die by his own hand, then, and in every such case, this policy shall be void," prevents the insurer from denying liability, if the insured came to his death by his own hand, in the absence of a showing that he was insane at the time. The Supreme Court answered this question that under that provision of the policy the insurer could not deny liability. The opinion is published in 254 U. S. 96, 41 Sup. Ct. 47, 65 L. Ed. ——. This disposes of the main issue of law.

[2] Objections were made to the introduction of certain evidence. After his disappearance the following letter was found in his safe deposit box:

"2—28—11.

"Dear Emie: There is nothing to say to you and the children, except that I have made a fearful mess of things and you all will be better off without me. I might write until doomsday and not make it a bit better. I despise myself so much there is only one thing to do, but it is mighty rotten on you and the kids. I just can't write any more. George."

Other letters written on the same date were as follows:

"Dear Scull: This is the last time I will bother you, and I thank you very much for all your kindness. The end has come, and I have given up. Inclosed are my keys to a box in the Safe Deposit & Trust Company, to whom I have written inclosed note, which will be your authority to open the box in which you will find further explanation. Please attend to this at once.
"George P. Johnson."

"Safe Deposit & Trust Co., Baltimore, Maryland: Please permit Mr. Charles O. Scull, vice president of the United States Guaranty Company, to open my box and remove the contents. I have given him the key.
"George P. Johnson."

Another letter found in the same deposit box was as follows:

"Dear Scull: Attached is a complete statement of the situation so far as I can think of it. The premiums on the 1911 policy is due 3—2. It is barely possible I may be found in a hospital to-morrow. In such case you will be notified, and I know you will protect the premium under the circumstances. If no hospital report reaches you by noon, there should be some from the morgue. The money you gave me last week, with what I got by pawning my watch, paid my board bill and some personal debts. The inclosed $7 is what is

left. I don't think my wife has more than a dollar, and I feel sure you will help her out temporarily, until she gets her part of the insurance money. She knows nothing of this wretched business.          George P. Johnson.
   "Assets:

| | | | |
|---|---|---|---|
| Life insurance, | Northwestern Mutual | ................................ | $ 4,000.00 |
| " | " | New York Life | ............................ | 3,000.00 |
| " | " | National $5,000.00, minus $439.26 and interest; | |
| | | balance  ........................... | 4,560.74 |
| | | | $11,450.74 |

   "At some future time my heirs will receive $4,000, which is my one-third of $10,000. and $4,000 in trust. I have not left a will.  One left a few years ago was destroyed.          G. P. J."

Objections to the introduction of these letters by the defendants were by the court overruled and proper exceptions saved.

[3] To establish the death of the assured plaintiffs had to rely entirely on circumstantial evidence, as the body had never been found. The law is well settled that, when a plaintiff in a case has to rely solely upon circumstantial evidence that it is very liberal in admitting any evidence which will aid in establishing the facts necessary to a recovery. Evidence of this nature is always admissible to show intent.

"The intention of a person, when material, may be proved by contemporaneous declarations in his letters, written under circumstances precluding a suspicion of misrepresentation." Mutual Life Insurance Co. v. Hillmon, 145 U. S. 285, 295, 12 Sup. Ct. 909, 36 L. Ed. 706; Connecticut Mutual Life Ins. Co. v. Hillman, 188 U. S. 208, 219, 23 Sup. Ct. 294, 47 L. Ed. 446; Wigmore on Evidence, vol. 1, §§ 102 and 237.

This has been frequently recognized and approved in actions on life policies, when death was self-inflicted. Sharland v. Washington Life Ins. Co., 101 Fed. 206, 41 C. C. A. 307; Rogers v. Manhattan Life Ins. Co., 138 Cal. 285, 71 Pac. 348; Rens v. Relief Ass'n, 100 Wis. 266, 75 N. W. 991; Weld v. Mutual Life Ins. Co., 61 Ill. App. 187. The court committed no error in admitting the letters. This also applies to the testimony of Mr. Scull in relation to the conversation he had with the assured shortly before his disappearance.

It is also claimed that the court committed error in refusing to direct a verdict for the defendants. Without setting out the evidence in the case, a careful reading of it satisfies that there was sufficient evidence to require the submission of the fact whether the assured was dead, and the finding of the jury is conclusive in this court.

[4] The attack upon the appointment of the administrator by the district court of Polk county, state of Iowa, in the action against the National Life Insurance Company, is without merit. The district courts of the state of Iowa are courts of record, with power to appoint administrators of the estates of deceased persons, and the judgments of these courts, in making such appointments, are not subject to collateral attack. That is well settled by an unbroken line of decisions of the Supreme Court of Iowa. Murphy v. Creighton, 45 Iowa, 179, 182; Morris v. Chicago, etc., R. R. Co., 65 Iowa, 727, 23 N. W. 143, 54 Am. Rep. 39; In re Barrett Estate, 149 N. W. 247, 167 Iowa, 218; In re Stone Estate, 173 Iowa, 371, 373, 155 N. W. 812, and on rehearing 173 Iowa, 371, 155 N. W. 812. In the last-cited case the court said:

"It would hardly seem necessary to take time for argument or citation of authorities upon a proposition so elementary; but we may say that the precise question was before this court in Murphy v. Creighton, 45 Iowa, 179. It was there decided that a showing of property of the deceased in the county where application is made is not necessary to the jurisdiction of the court to appoint an administrator, and that, such appointment having been made, it is not open to collateral attack. The same question of jurisdiction was again decided in Morris v. Chicago, R. I. & P. Ry. Co., 65 Iowa, 727, and the appointment of an administrator by an Iowa court was upheld, although the estate had no property in Iowa, nor any property right therein except a claim for damages for causing the death of the intestate, upon which claim suit might be brought in this jurisdiction."

This rule of law is recognized by all the courts. New England Mutual Life Ins. Co. v. Woodworth, 111 U. S. 138, 4 Sup. Ct. 364, 28 L. Ed. 379; White v. Spaulding, 50 Mich. 22, 14 N. W. 684; Jones v. Smith, 120 Ga. 642, 48 S. E. 134; Railroad Co. v. Bennett, 58 Kan. 499, 49 Pac. 606; Railroad Co. v. Lewis, 24 Neb. 848, 40 N. W. 401, 2 L. R. A. 67; Railroad Co. v. Andrews, 36 Conn. 214; Sulz v. Mutual Reserve Fund Life Ass'n, 145 N. Y. 562, 40 N. E. 242, 28 L. R. A. 379.

[5] Under the statutes of Iowa (Code, § 3306), a foreign administrator cannot maintain an action in its courts, but must take out letters of administration in that state in order to maintain it. Knight v. Railroad Co., 160 Iowa, 160, 140 N. W. 839.

There were other assignments of error, which have been carefully examined, but are not of sufficient importance to make it necessary to refer to them in this opinion.

The trial court committed no error in the trial of these cases and the judgments are affirmed.

Judge HOOK, who was to write the opinions in these cases, died without having done so, but concurred in the result and in consultation expressed the same views set forth in this opinion.